IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13–cv–02092–WJM–KMT

JERYD CALER,

    Plaintiff,

v.

B. KEEGAN, in his individual and official capacities, and
P. GONZALEZ, in his individual and official capacities,

    Defendants.

___

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
___

**Magistrate Judge Kathleen M. Tafoya**

    This case comes before the court on Defendants' Motion to Dismiss. (Doc. No. 6, filed Sept. 9, 2013.) For the following reasons, the court recommends that Defendants' Motion to Dismiss be GRANTED.

### FACTUAL BACKGROUND

    The following factual background is derived from Plaintiff's "Complaint for Deprivation of Rights under 42 U.S.C. § 1983 et seq; Compensatory Damages and Punitive Damages" (hereinafter "Complaint"). (Doc. No. 1, filed Aug. 6, 2013.) Plaintiff alleges that Defendants violated his constitutional rights during a traffic stop in July 2012.

On or about 9:50 p.m., on July 8, 2012, Plaintiff was travelling to work in his automobile. (Compl. ¶ 6.) Defendant Keegan, an Archuleta County Sheriff Deputy, pulled Plaintiff over. (*Id.* ¶ 9.) Plaintiff's Complaint does not specifically the purported reason for the traffic stop; instead, it merely states that Plaintiff had not "committed a crime nor had he demonstrated any action for any reasonable person to believe [he] was about to commit a crime" and that Defendant Keegan did not have "any probable cause for the stop." (*Id.* ¶¶ 7, 10.) The exhibits attached to Plaintiff's Complaint, however, suggest that Plaintiff was stopped for speeding. (*Id.*, Ex. A.)

Defendant Keegan approached Plaintiff's driver side window and demanded to see Plaintiff's license, registration, and proof of insurance. (*Id.* ¶ 10.) Although he felt "coerced, frustrated, and angry because of being deterred" from arriving to work on time, Plaintiff gave those items to Defendant Keegan. (*Id.*) Defendant Keegan then "exited to his vehicle" and, upon returning to Plaintiff vehicle, presented Plaintiff with a traffic citation indicating a fine assessment in the amount of $169.50. (*Id.*)

On October 11, 2012, Plaintiff appeared in Archuleta County Court (hereinafter the "County Court") for an arraignment on the charge(s) underlying the traffic stop and "challenged the court regarding subject matter jurisdiction." (*Id.* ¶ 12.) Plaintiff maintains that there "was no affidavit from a competent first hand material witness attesting to the fact that [Plaintiff] had committed or was about to commit a crime." (*Id.*)

Plaintiff also maintains that, at the time of the July 8, 2012 traffic stop, Defendant Keegan had not been sworn in as a Deputy Sheriff. (*Id.* ¶ 16.) In support of that position, Plaintiff

maintains that he obtained an oath of office for Defendant Keegan that is titled "Appointment of Non-Certified Limited Power Special Duty with Oath." (*Id.* ¶ 13.) The oath also provided that Defendant Keegan was a "Special Deputy for Investigations." (*Id.*) Plaintiff maintains that Defendant Keegan was not sworn in as a Deputy Sheriff until after the July 8, 2012 traffic stop, as evidenced by a separate oath of office entitled "Appointment of Deputy with Oath" dated August 2, 2012. (*Id.* ¶ 16, Ex. F at 3.)

On October 16, 2012, Defendant Keegan submitted to the County Court a letter requesting that the case against Plaintiff be dismissed. (*Id.*, Ex. A at 1.) The County Court instructed Defendant Keegan to submit a supplement regarding the "factual basis" for the court's authority to dismiss the case. (*Id.* ¶ 15, Ex. E.) In that supplement, Defendant Keegan attempted to clarify the discrepancy with respect to his oath of office. (*See* Compl., Ex. F, Memo. to Archuleta Cnty. Ct. from Dep. Keegan dated 10/24/2012.) More specifically, Defendant Keegan stated that, when he was hired on February 10, 2012, he was sworn in as a certified reserve deputy. (*Id.*) However, after Defendant Keegan signed the oath, administrative personnel observed that the date of the oath was incorrect. (*Id.*) As such, a few days later he signed an amended oath of office with the correct date. (*Id.*)

After Plaintiff requested a copy of his oath of office, Defendant Keegan learned that the administrative assistant who printed the amended oath of office for his signature mistakenly printed out the wrong oath template. (*Id.*) More specifically, instead of printing out the correct template titled "Appointment of Deputy with Oath," the assistant printed the template titled

3

"Appointment of Non-Certified Limited Power Special Duty with Oath." (*Id.*) However, notwithstanding the clerical error, Defendant Keegan maintained in the Supplement that he was correctly sworn in as a "Certified Reserve Deputy Sheriff" on February 10, 2012 with "power and authority to act as a peace officer as of that date." (*Id.*) Defendant Keegan further emphasized that he had been employed since May 18, 2012 as a full-time Deputy Sheriff with the Archuleta County Sheriff's Office, and was sworn in as a full-time Deputy Sheriff on August 2, 2012. (*Id.*)

Finally, Defendant Keegan advised the County Court that his request to dismiss the citation against Plaintiff was based strictly "on the described error of administrative documentation and the concern, based on the error, of prevailing at trial." (*Id.*) Nevertheless, Defendant Keegan stated that "[s]hould the court disagree with the request [to dismiss,] we are prepared to proceed with the charges." (*Id.*)

On October 25, 2012, the County Court dismissed the case against Plaintiff and vacated the trial. (Compl., Ex. G.) The court elected to dismiss the case because "a [m]otion [to dismiss] is within [Defendant Keegan's] discretion as the prosecutor." (*Id.*)

Plaintiff's sole allegations against Defendant Gonzalez, the Archuleta County Sheriff, are that he (1) must have approved of the letter seeking to dismiss the case against Plaintiff, because the letter was written on official Archuleta County Sherriff's Office letterhead and uses the verbiage "we" (*id.* ¶ 14); (2) "was cognizant of the aforementioned proceedings [against plaintiff] and was apprised of these facts pertaining to . . . [Defendant Keegan's] negligent and unreasonable behavior" (*id.* ¶ 21); (3) had "a legal duty to prevent and refrain from conduct that deters,

suppresses or otherwise breach[es]" Plaintiff's constitutional rights (*id.* ¶ 37); and (4) failed to properly supervise Defendant Keegan (*id.* ¶ 38).

## PROCEDURAL HISTORY

Plaintiff's Complaint asserts claims against Defendants in both their individual and official capacities. Specifically, Plaintiff asserts four claims pursuant to 42 U.S.C. § 1983 for violations of his First, Fourth, and Fourteenth Amendment rights[1] and two state law claims for negligence and intentional infliction of emotional distress.

Defendants' Motion to Dismiss was filed on September 9, 2013. (*See* Mot. Dismiss.) On September 26, 2013, Plaintiff filed a "Motion to Strike – Opposition to Defendants' '12(b)(6) Motion to Dismiss,'" which the court construes, and hereinafter refers to as Plaintiff's Response to Defendants' Motion to Dismiss.[2] (Doc. No. 11.) Defendants filed a reply on October 10, 2013.[3] (Doc. No. 14.) Accordingly, this matter is ripe for the court's review and recommendation.

---

[1] Plaintiff's claims also reference the Fifth Amendment. However, because Defendants are state actors, the Fifth Amendment is inapplicable. *Parnisi v. Colo. State. Hosp.,* 992 F.2d 1223, 1993 WL 118860, at *1 (10th Cir. Apr. 15, 1993) (state actors are subject to the due process clause of the Fourteenth Amendment, not the Fifth Amendment).

[2] On September 30, 2013, the court denied Plaintiff's Motion to Strike to the extent he that sought to strike Defendants' Motion to Dismiss, while clarifying that the court would still consider Plaintiff's Motion to the extent that it was responsive to Defendants' Motion to Dismiss. (*See* Minute Order, Doc. No. 13, filed Sept. 30, 2013.)

[3] On November 29, 2013, Plaintiff filed a "Verified Response to Defendants' Motion to Dismiss Motion for Default Judgment." (Doc. No. 17.) First, to the extent this document constitutes a response to Defendants' Motion to Dismiss, it is untimely. D.C.COLO.LCivR 7.1C. Second, to the extent it can be construed as a surreply to Defendants' reply, such a filing is not permitted under the Local Rules in this District. *See id.* Finally, to the extent that it moves for default judgment, it is improperly included in a response to the original motion. *Id.* Nevertheless, the court has reviewed the arguments raised in this filing and finds they would not alter the court's

## LEGAL STANDARDS

*A.* **Pro Se** *Plaintiff*

Plaintiff is proceeding *pro se*. The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers"). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citations omitted). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *see also Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (a court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").

*B.* ***Failure to State a Claim Upon Which Relief Can Be Granted***

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

---

recommended disposition of Defendants' Motion to Dismiss.

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Bellmon*, 935 F.2d at 1198. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id*. at 678-80. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 679.

Notwithstanding, the court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678  Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (citation omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. (citation omitted).

### D.     *Qualified Immunity*

The doctrine of qualified immunity shields government officials from individual liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified immunity is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001).

Although qualified immunity is most often raised at the summary judgment stage, the Tenth Circuit has recognized the propriety of raising a qualified immunity defense in a motion to dismiss. *See Pueblo Neighborhood Health Ctr., Inc. v. Losavio*, 847 F.2d 642, 645-46 (10th Cir. 1988).  Once the defense is asserted, the burden shifts to the plaintiff to establish (1) that the defendant's actions violated a federal constitutional or statutory right and (2) that the federal right was clearly established at the time of the challenged conduct. *PJ ex rel. Jensen v. Wagner*, 603 F.3d 1182, 1196 (10th Cir. 2010); *see also Losavio*, 847 F.2d at 646.  While the plaintiff bears this burden, at the motion to dismiss stage, well-pleaded factual allegations are taken as true, although

the court must consider whether they plausibly give rise to a claim for relief.  *Weise v. Casper*, 593 F.3d 1163,1166 (10th Cir. 2010).  The plaintiff first must establish that his allegations, taken in the light most favorable to plaintiff, show that the officer's conduct violated a constitutional right. *Saucier*, 533 U.S. at 201.  If the plaintiff establishes a violation of a constitutional or statutory right, "the next, sequential step is to ask whether the right was clearly established."  *Id*.  This determination must be made "in light of the specific context of the case, not as a broad general proposition."  *Id*.  "[T]he relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Id*. at 202.  If the plaintiff fails to satisfy either part of this "heavy two-part burden," the court must grant the defendant qualified immunity and dismiss the deficient claims.

The United States Supreme Court has altered somewhat the analytical process outlined in *Saucier*, holding that the sequence of the analysis is no longer mandatory.  *Pearson v. Callahan*, 555 U.S. 223 (2009).  The judges of the district courts and the courts of appeals are now permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.  *Id*. at 236.  The Supreme Court noted, however, that the sequence set forth in *Saucier* often is the appropriate analytical sequence.  *Id*.

## ANALYSIS

A.  *Personal Participation of Defendant Gonzales*

Defendants argue that Plaintiff fails to sufficiently allege that Defendant Gonzales personally participated in any violation of Plaintiff's constitutional rights. (Mot. at 9.) The court agrees.

Personal participation is an essential allegation in a 42 U.S.C. § 1983 civil rights action. *Bennett v. Passic*, 545 F.2d 1260, 1262–63 (10th Cir. 1976). To prevail on a claim for damages for a constitutional violation under § 1983, a plaintiff must establish that the defendant acted under color of state law and caused or contributed to the alleged violation. *Jenkins v. Wood,* 81 F.3d 988, 994 (10th Cir. 1996). There must be an affirmative link between the alleged constitutional violation and the defendant's participation, control or direction, or failure to supervise. *See Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993). The plaintiff must show that the defendant personally participated in the alleged violation, and conclusory allegations are not sufficient to state a constitutional violation. *Id.*

Plaintiff's allegations that Defendant Gonzalez failed to supervise Defendant Keegan, was aware of the case against Plaintiff and Defendant Keegan's behavior, and had a legal duty to prevent or refrain from violating Plaintiff's constitutional rights are either conclusory or effectively assert that Defendant Gonzalez should be held liable based on his supervisory duties as Sheriff. This is insufficient to establish that Defendant Gonzalez personally participated in any violation of Plaintiff's constitutional rights. *See Butler,* 992 F.2d at 1055; *see also Doyle v. Cella,* No. 07-cv-01126-WDM-KMT, 2008 WL 4490111, at *2 (D. Colo. Sept. 30, 2008) (bare allegation that defendant was "made aware" of constitutional violations was insufficient to establish personal participation). Plaintiff's speculative assertion that Defendant Gonzalez

approved the letter seeking to dismiss the traffic case against Plaintiff is likewise insufficient. Indeed, the court does not read Plaintiff's Complaint to assert that his constitutional rights were somehow violated when the County Court *dismissed* the case against him. Accordingly, because Plaintiff has failed to establish that Defendant Gonzalez personally participated in any violation of his constitutional rights, Defendant Gonzalez is properly dismissed as a Defendant.

### B.     *Oath of Office Allegations*

Each of Plaintiff's claims alleges that Defendant Keegan "violat[ed] Article 6 of the Constitution of the United States." (Compl. ¶¶ 25, 28, 31, 34.) These allegations appear to relate to the purported deficiencies in Defendant Keegan's oath of office, as Clause 3 of Article VI of the United States Constitution provides that all "executive and judicial Officers, both of the United States and of the several States, shall be bound by Oath or Affirmation, to support this Constitution." U.S. Const. Art. VI, cl. 3.

What is not clear, however, is whether Plaintiff intended to raise a self-standing § 1983 claim that Defendant Keegan violated Article VI. Nevertheless, to the extent that Plaintiff intended to assert such a claim, it necessarily fails, as a violation of Article VI is not a cognizable claim under § 1983. *Krajicek v. Nichols,* No. 98-1878, 1999 WL 991252, at *2 (6th Cir. Sept. 28, 1999) (unpublished table opinion) (citing *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155-57 (1978); *McWilliams v. Noel,* 12-3089-JDT-dkv, 2013 WL 5409887, at *6 (W.D. Tenn. Sept. 25, 2013); *Lake v. Granholm,* No. 1:07-cv-572, 2008 WL 724162, at *2 n.3 (W.D. Mich. Mar. 17, 2008) (collecting cases).

In addition, even assuming Defendant Keegan's oath of office was somehow deficient, that fact does not abrogate or otherwise impact Defendant Keegan's entitlement to qualified immunity. *Conklin v. Anthou,* 495 F. App'x 257, 265 (3d Cir. 2012) (the fact that several government defendants had failed to take a prerequisite oath of office did not abrogate claims of immunity); *Wilson v. Wilson-Polson,* 446 F. App'x 330, 331 (2d Cir. 2011) (family court referee's failure to file an oath of office did not deprive her of jurisdiction or immunity from suit); *cf. Thatcher Enter. v. Cache Cnty. Corp.,* 902 F.2d 1472, 1478 (10th Cir. 1990) (state statutory immunity not diminished by absence of formal, written oath of office). Therefore, Plaintiff's allegations regarding the purported deficiencies in Defendant Keegan's oath of office do not factor into the court's analysis.

## C.   *Claim One – First Amendment*

Defendants argue that Plaintiff's first claim fails because the allegations in the Complaint do not indicate that either Defendant interfered with Plaintiff's right to free speech.

Although not entirely clear—at times, Plaintiff's Complaint is far from a model of clarity—it appears that Plaintiff's first claim alleges that Defendants retaliated against him for exercising his right to free speech. Indeed, the only reference to the First Amendment in Plaintiff's Complaint is that Defendants' "deterr[ed], suppress[ed], or breach[ed]" Plaintiff's "freedom of speech." (Compl. at 6.)

To state a § 1983 retaliation claim, a plaintiff must allege (1) that he was engaged in a constitutionally protected activity; (2) that a defendant's action caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that

defendant's action was substantially motivated as a response to the plaintiff's exercise of his First Amendment speech rights. *Becker v. Kroll,* 494 F.3d 904, 926 (10th Cir. 2007) (citing *Worrell v. Henry,* 219 F.3d 1197, 1212 (10th Cir. 2000)). Plaintiff's claim clearly fails on the first element; the Complaint is devoid of any allegations establishing that Plaintiff was engaged in constitutionally protected activity.[4] Accordingly, the court finds that Plaintiff's first claim fails to state a claim for relief and, therefore, Defendant Keegan is entitled to qualified immunity from this claim. *Saucier*, 533 U.S. at 201.

### D.    *Claims Two, Three, and Four*

Plaintiff's second, third, and fourth claims all allege that the traffic stop initiated by Defendant Keegan amounted to an unreasonable search and seizure, in violation of the Fourth Amendment. (Compl. at 7-8.) Although the allegations of each claim are identical, it appears that claim two relates to the seizure of Plaintiff's person, claim three relates to the seizure of Plaintiff's effects, and claim four relates to the "search" of Plaintiff's effects. (*See id.*) Plaintiff also appears to allege that Defendant Keegan violated his Fourteenth Amendment rights during the traffic stop by "depriving [Plaintiff] of the enjoyment of his property and effects without due process." (Compl. ¶¶ 28, 31, 34.) Defendants argue that Plaintiff's second, third and fourth claims do not sufficiently allege a violation of Plaintiff's constitutional rights. The court agrees.

As an initial matter, the court finds that Plaintiff's allegation that Defendant Keegan lacked a "sworn affidavit by any competent firsthand material fact witness, while being under Oath, to the

---

[4] Furthermore, even if Plaintiff did allege that he was engaged in constitutionally protected activity, Plaintiff's first claim would nevertheless fail on the third element, as the Complaint does not include any facts suggesting that Defendant Keegan issued Plaintiff a traffic summons in response to his purported exercise of his free speech rights.

fact that a crime had been committed . . . and no warrants were at any time issued" (Compl. ¶¶ 28, 31, 34) is irrelevant to the question of whether Plaintiff's Fourth Amendment rights were violated. The Fourth Amendment's warrant requirement does not apply to traffic stops like the one at issue here. *United States v. Arvizu,* 534 U.S. 266, 273 (2002).

Instead, for purposes of determining whether a Fourth Amendment violation has occurred, the court analyzes a traffic stop "under the principles developed for investigative detentions in *Terry v. Ohio,* 392 U.S. 1 1968)." *United States v. Trestyn,* 646 F.3d 732, 741-42 (10th Cir. 2011). "When evaluating the reasonableness of a traffic stop, [the court] ask[s] 'first whether the officer's action was justified at its inception, then second whether it was reasonably related in scope to the circumstances which justified the interference in the first place.'" *United States v. Cash,* --- F.3d ----, 2013 WL 5878725, at *7 (10th Cir. Nov. 4, 2013) (quoting *Trestyn,* 646 F.3d at 742). As to the first inquiry, "[a] traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring.'" *United States v. Botero-Ospina,* 71 F.3d 783, 786 (10th Cir. 1995) (en banc).

As to the second inquiry, a traffic stop generally "must last no longer than is necessary to effectuate the purpose of the stop." *United States v. Pena-Montes,* 589 F.3d 1048, 1052 (10th Cir. 2009) (quotations omitted). A law enforcement officer conducting a routine traffic stop "may generally request a driver's license, registration, and other required papers, run requisite computer checks, and issue citations or warnings as appropriate." *United States v. Rosborough,* 366 F.3d 1145, 1148 (10th Cir. 2004).

14

On the first inquiry, the court finds that Plaintiff's allegations fail to plausibly suggest that Defendant Keegan lacked reasonable suspicion to believe that Plaintiff had committed or was about to commit a traffic violation. Plaintiff's only allegations regarding the events that formed the basis of the traffic stop are that he "had not committed a crime nor had he demonstrated any action for any reasonable person to believe [he] was about to commit a crime" and that Defendant Keegan did not have "probable cause for the stop." (Compl. ¶¶ 7, 10.) These barebones, conclusory assertions, however, is not entitled to the assumption of truth. In the absence of some *factual* allegations regarding the basis for the traffic stop, the court is unable to draw the inference that Defendant Keegan lacked reasonable suspicion to stop Plaintiff. Instead, at very best, Plaintiff's allegations suggest a mere possibility that Defendant Keegan violated his constitutional rights, which is insufficient to state a claim for relief.

As to the second inquiry, because Plaintiff's allegations do not plausibly establish a lack of reasonable suspicion to support the traffic stop, Defendant Keegan was entitled to request Plaintiff's driver's license, registration, and proof of insurance and to issue a citation as appropriate. *Rosborough,* 366 F.3d at 1148. As such, the court finds that Plaintiff has failed to establish a Fourth Amendment violation for unreasonable search or seizure of his papers and effects or a Fourteenth Amendment violation for "depriv[ing] [Plaintiff] of the enjoyment of his property and effects without due process." (Compl. ¶¶ 28, 31, 34.) Finally, Plaintiff's Complaint does not indicate that the traffic stop lasted longer than was necessary to effectuate the stops purpose. *Pena-Montes,* 589 F.3d at 1052.

Accordingly, the court finds that Plaintiff's second, third, and fourth claims fail to state a claim for violations of his constitutional rights. Therefore, Defendant Keegan is entitled to qualified immunity from these claims.

### E.  § 1983 Official Capacity Claims

Plaintiff has named Defendants in both their individual and official capacities. (Compl ¶¶ 4-5.)  A § 1983 claim against a defendant in his official capacity must be treated as a municipal liability claim against Archuleta County. *See Monell v. Department of Soc. Servs.,* 436 U.S. 658, 691 (1978) (noting "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent")*; Drake v. City and Cnty. of Denver,* 953 F. Supp. 1150, 1156 (D. Colo. 1997) ("a suit against a municipal employee in his 'official capacity' is the same as a suit against the City.") (citation omitted).

Municipal entities may be held liable under § 1983 only when a constitutional deprivation is inflicted pursuant to a government's policy or custom. *Monell,* 436 U.S. at 691.  The plaintiff must be able to demonstrate that the "municipality was the 'moving force' behind the injury alleged." *Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997).  However, a municipality cannot be liable under § 1983 without a predicate constitutional harm inflicted by an officer. *Jiron v. City of Lakewood*, 392 F.3d 410, 419 (10th Cir. 2004) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)); *see also Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1317-18 (10th Cir.2002) ("We will not hold a municipality liable [for constitutional violations] when there was no underlying constitutional violation by any of its officers").

As outlined above, even presuming the truth of Plaintiff's factual allegations, as opposed to

barebones conclusions, and construing them in a light most favorable to him, Plaintiff's Complaint fails to state a plausible claim that Defendants violated his constitutional rights. As such, without this predicate constitutional harm, Plaintiff's § 1983 municipal liability claim must fail.

### F.     *State Law Claims*

In light of this court's recommendation that the federal claims be dismissed, only Plaintiff's state law claims for negligence and intentional infliction of emotional distress would remain in the case. Although the court could exercise supplemental jurisdiction, "[n]otions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary." *Ball v. Renner,* 54 F.3d 664, 669 (10th Cir. 1995). Indeed, "[w]hen all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." *Smith v. City of Enid*, 149 F.3d 1151, 1156 (10th Cir. 1998); *see also Brooks v. Gaenzle,* 614 F.3d 1213, 1229 (as a general matter, if federal claims are dismissed before trial, leaving only issues of state law, the court should decline to exercise supplemental jurisdiction by dismissing the case without prejudice). Because Plaintiff's remaining claims are grounded in state law, there is no compelling reason to retain jurisdiction in this case. Accordingly, the court finds it proper to decline to exercise supplemental jurisdiction and dismiss Plaintiff's state law claims without prejudice.

WHEREFORE, for the foregoing reasons, I respectfully

RECOMMEND that Defendants' Motion to Dismiss (Doc. No. 6) be GRANTED.

### ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their

failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 4th day of December, 2013.

BY THE COURT:

_____
Kathleen M. Tafoya
United States Magistrate Judge